UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 18-06600 |
| | ) | |
| 3601 CROSSROADS, LLC | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Judge Timothy A. Barnes |

### FINAL ORDER (A) AUTHORIZING THE DEBTOR
### TO USE CASH COLLATERAL (B) GRANTING ADEQUATE PROTECTION,
### AND (C) GRANTING RELATED RELIEF

Upon the motion (the "Motion") filed by the above-captioned debtor and debtor-in-possession (the "Debtor"), pursuant to sections 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2(C) of the Local Bankruptcy Rules for the Northern District of Illinois (the "Local Rules"), for entry of (i) an interim order (a) authorizing the Debtor to use cash collateral, (b) granting adequate protection, (c) scheduling a final hearing on the Motion, and (d) granting related relief, and (ii) a final order on substantially the same terms as the Interim Order; and interim hearings on the Motion having been held on March 21, 2018 and April 10, 2018 (the "Interim Hearings"), and a final hearing on the Motion having been held on May 15, 2018 (the "Final Hearing"), the Debtor and Lender (as defined below) having agreed to the entry of this final order (the "Final Order") and after due deliberation and good and sufficient cause appearing therefor;

### PARTIES STIPULATE AS FOLLOWS

A.    On March 7, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate and manage its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Chapter 11 Case.

4810-9785-4309 3108652 000034

B.  The United States Bankruptcy Court for the Northern District of Illinois (the "Court") has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O). Venue of the Chapter 11 Case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.  The statutory predicates for the relief requested in the Motion are sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014 and Local Rule 4001-2.

D.  Notice of the Motion having been given as set forth in the Motion is sufficient in light of the circumstances and the nature of the relief requested in the Motion and no other or further notice is necessary or required, except as otherwise set forth herein.

E.  As of the date of the entry of this Final Order, no official committee has been appointed in this chapter 11 case pursuant to section 1102 of the Bankruptcy Code.

F.  The Debtor stipulates and agrees that:

    i.  On or about October 9, 2012, Archetype Mortgage Capital LLC ("Archetype") made a loan to the Debtor in the original principal amount of $7,800,000.00 (the "Loan"), pursuant to a Loan Agreement dated as of October 9, 2012 (the "Loan Agreement").

    ii.  The Loan is evidenced by a Promissory Note dated October 9, 2012 in the original principal amount of $7,800,000.00 made by the Debtor and payable to the order of Archetype (the "Note").

    iii.  To secure repayment of the Loan, Debtor executed and delivered to Archetype a Mortgage, Assignment of Leases and Rents and Security Agreement dated as of October 9, 2012 (collectively, the "Mortgage") encumbering the Debtor's real property commonly known as 3601 Algonquin Road, Rolling Meadows, Illinois, 60008 (the "Property"). The Mortgage was recorded with the Cook County Recorder of Deeds (the "Cook County Recorder") on October 10, 2012, as document number 1228418078.

    iv.  As further security for the Loan, Debtor executed and delivered to Archetype an Assignment of Leases and Rents dated as of October 9, 2012 and encumbering the Property (the "ALR"). The ALR was recorded with

2

      the Cook County Recorder on October 10, 2012 as document number 1228418079.

  v. In connection with the Loan, Debtor, Archetype and L/M Development, LLC entered into a Cash Management Agreement dated as of October 9, 2012 (the "Cash Management Agreement").

  vi. On or about October 9, 2012, Archetype assigned its interests in the Note, the Mortgage, the Loan Agreement, the ALR, the Cash Management Agreement and the other documents evidencing and securing the Loan (collectively, the "Loan Documents") to Archetype Mortgage Funding I LLC, which subsequently assigned its interests thereunder, on or about November 26, 2012, to U.S. Bank National Association, as Trustee, on behalf of the Registered Holders of GS Mortgage Securities Corporation II, Commercial Mortgage Pass-through Certificates, Series 2012-GCJ9 (the "Lender").

  vii. On or about November 30, 2012, the Lender granted Rialto Capital Advisors, LLC ("Rialto") a Limited Power of Attorney to act on behalf of the Lender in connection with the Loan (the "Power of Attorney").

  viii. In its capacity as the Special Servicer and as Attorney-in-Fact for the Lender pursuant to the Power of Attorney, Rialto is authorized to act on behalf of the Lender.

  ix. As of the Petition Date, the Debtor is indebted to Lender in the principal amount of $7,131,201.85[1] pursuant to the Note.

  x. The Debtor's obligations under the Loan Documents (the "Obligations") are secured by the Property (as defined above), all proceeds thereof, and all other Property (as such term is defined in the Mortgage) (collectively, the "Collateral") under the Mortgage.

G. Without prejudice to the rights of any other party, the Debtor acknowledges and stipulates that Lender's security interests in, and liens on, the Collateral were properly perfected and are valid and enforceable.

H. The ability of the Debtor to finance its operations requires access to cash derived from the Collateral and the Debtor seeks to use that cash, which cash constitutes the Lender's "Cash Collateral" (as such term is defined in 11 U.S.C. § 363(a), the "Cash Collateral"), in order

---

[1] $7,131,201.85 represents the principal balance on the Loan and does not include interest, fees, costs and other charges due and owing claimed by Lender under the Loan Documents

3

to pay for certain expenses. All of the Debtor's cash, on hand and cash flow from the Debtor's operations, consists of proceeds of prepetition accounts that are subject to the valid, first priority, perfected security interest and liens of the Lender.

I.  The Cash Collateral is subject to the valid, perfected and first priority liens and security interests of the Lender, and the Cash Collateral constitutes property of the Debtor's estate.

J.  The Debtor stipulates and agrees that it will continue to pay its expenses only in accordance with the terms of the Budget, a copy of which attached hereto as **Exhibit 1** (the "Budget") for the period through and including June 30, 2018 (the "Current Budget Period").

K.  Lender is entitled, pursuant to Bankruptcy Code sections 361 and 363(e), to adequate protection of its interests in the Collateral, including for the use of Cash Collateral, the use, sale, or lease of the Collateral other than Cash Collateral, and for the imposition of the automatic stay.

L.  The Debtor offers, as adequate protection of the Lender's interest in the Cash Collateral, monthly payments as they were due pre-petition in accordance with the Loan Documents, and the Court's condition that the Debtor only uses the Cash Collateral in accordance with the Budget during the Current Budget Period. Additionally, the Debtor will agree that the Lender's security interest and liens in the Collateral shall create a valid lien on and security interest in all of the property of the Debtor acquired or generated after the Petition Date, but solely to the same validity, extent and priority, and of the same kind and nature, as the liens and security interests of the Lender securing the Obligations to the Lender under the Loan Documents.

4

M. The Debtor has requested the immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b). The entry of this Final Order will minimize disruption of the Debtor's operations, will preserve and maintain the assets of the Debtor's estate, and is in the best interest of, the Debtor, its creditors and its estate.

N. Subject to the entry, and continued effectiveness of this Final Order, the Lender has consented to the use of Cash Collateral in accordance with the Budget as set forth herein. The foregoing notwithstanding, nothing in this Final Order shall be construed as limiting or prohibiting Lender from seeking additional adequate protection of its interests or objecting to any relief sought by the Debtor in this Case.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1. The Motion is granted on a final basis subject to the terms and conditions set forth in this Final Order.

2. Any objections to the Motion with respect to entry of this Final Order, other than those of the Lender, that have not been withdrawn, waived, or settled are hereby denied and overruled. The objections raised by the Lender are reserved and not waived.

3. The Debtor is hereby authorized to use Cash Collateral only in accordance with the Budget during the Current Budget Period. The Budget may be amended, supplemented, extended or otherwise modified during the Current Budget Period, with the prior written consent of the Lender without further hearing or order by the Court. Use of Cash Collateral shall not be extended beyond the Current Budget Period absent the prior written consent of the Lender or further order of this Court.

4. As adequate protection for the benefit of the Lender, the Debtor shall provide the Lender the following information:

4810-9785-4309.3 108652:000034

(a) <u>Monthly Reports</u>. By the seventh (7th) day after the end of each month, or on the next business day if the 7th day is a Saturday, Sunday, or legal holiday, no later than 10:00 p.m. (applicable Central Time), a variance report reflecting, on a line-item basis, the actual cash receipts and disbursements for the prior month, the dollar variance and the percentage variance of such actual receipts and disbursements from those reflected in the Budget for the prior month, in form, detail and substance reasonably satisfactory to the Lender.

(b) <u>Communications Regarding Any Asset Sale, Post-Petition Financing or Plan of Reorganization</u>. Every other week, an oral status report with Debtor's counsel concerning any asset sale, post-petition financing, or Plan of Reorganization involving the Debtor.

(c) <u>Requests for Additional Information</u>. Within five (5) business days or such other time period agreed to at the time of the request by the Lender, the Debtor shall, to the extent possible, provide such requested non-privileged reports, analysis, documents and information as reasonably requested; and

5. In the event of an uncured Event of Default as defined in Section 12, Lender may request that the Court further restrict the Debtor's use of the Cash Collateral and/or seek other appropriate relief, and the Debtor agrees that Lender's request may be heard in an expedited manner by the Court with at least three (3) business days' written notice to the Debtor and pending order of the Court.

6. Upon written notice by Lender to Debtor and its counsel, the Debtor shall, within three (3) business days permit Lender's agents, consultants, advisors, auditors and employees (collectively, "<u>Consultants</u>") reasonable access, during normal business hours, to inspect, review

4810-9785-4309.3 108652:000034

and photocopy or otherwise duplicate (as applicable) the Debtor's books, records and place of business to verify the existence, condition, value and location of property in which Lender holds liens or security interests. The Debtor shall permit, without material disruption to the Debtor's operations or employees, Consultants full access to examine the respective corporate, financial and operating records, make copies thereof, inspect the assets, properties, operations and affairs of the Debtor, visit any or all of the offices of the Debtor to discuss such matters with Thomas Kolschowsky (Debtor's Senior Vice President), and the Debtor shall cooperate with the Consultants in all reasonable respects. The Debtor shall provide Lender and the Consultants, with commercially reasonable promptness, such financial information concerning the Debtor's cash flow projections, business plan, and other aspects of operations as such parties may reasonably request from time to time except matters and documents that are privileged.

7. As further adequate protection for the use of cash collateral, as set forth in the Budget, the Debtor shall pay the Lender, (i) one (1) monthly principal and interest payment in the amount of $41,297.18 on or before June 1, 2018, and (ii) each month thereafter, on or before the first of each month, a monthly principal and interest payment in the amount of $41,297.18 (each, an "Adequate Protection Payment").

8. In connection with the Debtor's proposed use of Cash Collateral hereunder and in order to provide Lender with additional adequate protection pursuant to Sections 361 and 363(e) of the Bankruptcy Code for the aggregate diminution of the Cash Collateral resulting from the Debtor's use thereof after the Petition Date, Lender is hereby granted, retroactively to the Petition Date, and without the necessity of any additional documentation or filings, valid, enforceable, non-avoidable and fully perfected replacement liens (collectively "Replacement Liens") on and in all property of the Debtor acquired or generated after the Petition Date, to the

7

same extent, validity and priority as Lender's preexisting liens and security interests, but excluding any avoidance actions under Chapter 5 of the Bankruptcy Code.

9. This Order shall be sufficient and conclusive evidence of the validity, enforceability and perfection of the Replacement Liens, whether or not Lender elects to file or record financing statements, any other documents or to take such steps as may otherwise be required to obtain, evidence or perfect such liens under applicable law.

10. The entry of this order is without prejudice to the Debtor's right to seek authority to use additional cash collateral if the Debtor determines that the cash collateral use authorized by this Final Order is insufficient.

11. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay any amount as provided under this order, which may be reasonably required as necessary for the Debtor's full and timely performance under this Final Order.

12. An "Event of Default" under this order shall mean any one of the following:

    a. Debtor's failure to maintain appropriate insurance for the Collateral;

    b. If Debtor makes any payments not showing on the Budget without the prior written consent of the Lender or further order of this Court;

    c. Debtor fails to provide when due, any reports or accounting information required by this order;

    d. Any termination by this Court of the Debtor's use of Cash Collateral; or

    e. Failure to make any Adequate Protection Payment when due.

13. In the Event of Default, Lender must notify Debtor and the Debtor has three (3) business days to cure an Event of Default. If the Event of Default is not cured, the Lender is entitled to request a hearing to terminate Debtor's use of Cash Collateral.

14. The Debtor is hereby directed to serve a copy of this Final Order on (i) the Office of the United States Trustee for the Northern District of Illinois, (ii) the Lender or their counsel, if known, (iii) the Debtor's 20 largest unsecured creditors, and (iv) all parties who filed a notice of appearance pursuant to Bankruptcy Rule 2002, by first class mail within two (2) days of the entry of this Final Order.

15. This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof.

16. Notwithstanding the possible applicability of Bankruptcy Rule 6003 or 6004(h) or otherwise, the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Final Order.

17. The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Final Order.

18. Entry of this Order shall be without prejudice to (a) any and all rights, remedies, claims and causes of action Lender may have against the Debtor or any third parties, including, without limitation, any guarantor of the Debtor's Obligations to Lender, or (b) the right of Lender to seek relief from the automatic stay in effect pursuant to Section 362 of the Bankruptcy Code, to seek additional adequate protection of its interests in the Collateral, or any other relief in this Case.

19. The Court shall hold a status hearing on the Debtor's continued use of Cash Collateral on Wednesday, June 27, 2018, at 10:30 a.m.

4810-9785-4309.3 108652:000034

DATED: **2 3 MAY 2018**  ENTERED: *[signature]* AH

_____
UNITED STATES BANKRUPTCY JUDGE

AGREED TO BY:

John A. Lipinsky (ARDC#6207678)
Clingen Callow & McLean, LLC
2300 Cabot Drive, Suite 500
Lisle, IL 60532
630-871-2600
lipinsky@ccmlawyer.com

*Counsel to the Debtor*

- and –

Edward S. Weil (IL 6194191)
Jonathan E. Aberman (IL 6255541)
Maria A. Diakoumakis (IL 6289309)
DYKEMA GOSSETT PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60603
T: (312) 876-1700 | F: (312) 876-1155
eweil@dykema.com
jaberman@dykema.com
mdiakoumakis@dykema.com

*Counsel to Rialto Capital Advisors, LLC,
as Special Servicer and Attorney-in-Fact for
U.S. Bank National Association, as Trustee,
on behalf of the Registered Holders of GS
Mortgage Securities Corporation II,
Commercial Mortgage Pass-Through
Certificates, Series 2012-GCJ9*

4810-9785-4309.3 108652 000034

# 3601 Crossroads LLC - Budget
## for May 10, 2018 through June 30, 2018

| Cash Receipts | Actual as of May 9 | Previous Budget Not Disbursed | Budgeted May 10-Jun 30 | Totals With Budget |
|---|---:|---:|---:|---:|
| Opening Balance | $ 100 | | $ - | $ 100 |
| Rental Income | $ 399,838 | | $ 295,000 | $ 694,838 |
| Tenant Request for Paid Alterations | $ - | | $ 7,000 | $ 7,000 |
| Rent Forwarded from Lender | $ 119,500 | | $ - | $ 119,500 |
| Post BK Rent Not Returned to DIP by Lender | $ 14,560 | | $ - | $ 14,560 |
| **Total Cash Receipts** | $ 533,999 | | $ 302,000 | $ 835,999 |

| Cash Disbursements | Actual as of May 9 | Previous Budget Not Disbursed | Budgeted May 10-Jun 30 | Totals With Budget |
|---|---:|---:|---:|---:|
| **Operating Costs** | | | | |
| Utilities/Electric | $ 48,154 | | $ 60,500 | $ 108,654 |
| Repairs and Maintenance | $ 7,583 | | $ 37,866 | $ 45,450 |
| Cleaning and Security | $ 19,596 | | $ 31,831 | $ 51,427 |
| Landscaping and Snow | $ 1,935 | | $ 7,630 | $ 9,565 |
| Building Maintenance Service | $ 17,002 | | $ 15,538 | $ 32,539 |
| Insurance Expense | $ - | | $ 29,590 | $ 29,590 |
| Miscellaneous Office | $ 471 | | $ 1,094 | $ 1,564 |
| Management Fees | $ 15,108 | | $ 16,774 | $ 31,882 |
| **Total Operating Costs** | $ 109,848 | | $ 200,823 | $ 310,671 |
| **Debt Service, Adequate Protection & Special Costs** | | | | |
| Mortgage Payment-Principal and Interest | $ 82,594 | | $ 41,297 | $ 123,891 |
| Adequate Protection Deposits (combined) | $ 27,579 | | $ - | $ 27,579 |
| Security Deposit Refund | $ - | | $ 340 | $ 340 |
| US Trustee Quarterly Payments | $ 975 | | $ - | $ 975 |
| Leasing Commissions | $ 15,889 | | $ 744 | $ 16,633 |
| Tenant Alteration | $ - | | $ 14,417 | $ 14,417 |
| Tenant Buildout | $ 45,184 | | $ 56,684 | $ 101,868 |
| Building Roof Repair | $ - | | $ 17,650 | $ 17,650 |
| Parking Lot Repair, Sealcoating & Striping | $ - | | $ 21,125 | $ 21,125 |
| Chiller Float Replacement | $ 8,880 | | $ - | $ 8,880 |
| State-mandated Annual Testing of Elevators | $ - | | $ 3,900 | $ 3,900 |
| Elevator Service (continuing) | $ 8,999 | $ 23,395 | $ 3,601 | $ 35,995 |
| **Total Debt Svc, Adeq Prot & Special Costs** | $ 190,100 | $ 23,395 | $ 159,758 | $ 373,253 |

| Cash Flow Summary | Actual as of May 9 | Previous Budget Not Disbursed | Budgeted May 10-Jun 30 | Totals With Budget |
|---|---:|---:|---:|---:|
| Total Cash Receipts | $ 533,999 | $ - | $ 302,000 | $ 835,999 |
| Total Cash Disbursements | $ 299,949 | $ 23,395 | $ 360,581 | $ 683,924 |
| **Net Cash Flow** | $ 234,050 | $ (23,395) | $ (58,581) | $ 152,074 |